IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MELISSA M. JAYNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:12CV168 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Melissa M. Jaynes, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim(s) for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 19, 21). For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI in December 2008, alleging a disability onset date of September 19, 2008. (Tr. 137-43.) Upon

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

denial of the application(s) initially (Tr. 45, 46) and on reconsideration (Tr. 47, 48), she requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 70-71). Plaintiff and her attorney attended the hearing on June 2, 2010. (Tr. 22-40.) By decision dated June 16, 2010, the ALJ ruled Plaintiff not disabled under the Act. (Tr. 6-21.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision for purposes of judicial review. (Tr. 1-3.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2013.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since . . . the alleged onset date . . . .
>
> 3. [Plaintiff] has the following severe impairments: obesity, a history of attention deficit disorder, the affective disorder of bipolar syndrome I, a borderline personality disorder, and poly-substance use disorder . . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she is limited to simple, routine, repetitive tasks in a low-stress environment with low levels of social interaction.

(Tr. 11-14.) In light of the foregoing findings regarding residual functional capacity ("RFC"), the ALJ ruled that Plaintiff could not

2

perform her past relevant work. (Tr. 16.) However, the ALJ concluded that, "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id.) Accordingly, the ALJ found that Plaintiff did not suffer from a "disability," as defined in the Act, at any time from the alleged onset date through the date of decision. (Tr. 17.)

## **DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [judicial] review of [such] a decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less

than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citation omitted).

5

along the SEP forecloses a benefits award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179. Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80.[4] However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age,

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

6

education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry the "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

### **Assignment(s) of Error**

Plaintiff "accepts the medical history as set fort [sic] in the ALJ decision of June 16, 2010." (Docket Entry 20 at 2.) However, Plaintiff nonetheless contends that the Court should overturn the ALJ's ultimate determination of no disability for two reasons: 1) at step five, "[t]he ALJ failed to obtain the testimony of a Vocational Expert (VE) to prove the existence of work at the level of [RFC] as found by the ALJ" (id. at 4); and 2) "[o]n September 12, 2013, [a different ALJ] found based on [Plaintiff's] application filed October 13, 2010 that [Plaintiff] has been disabled under the [] Act since June 17, 2010, the day after the unfavorable decision . . . dated June 16, 2010 . . . justifying remand of the [instant] claim to reassess the onset date of disability" (id. at 5-6). Defendant argues otherwise and seeks

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

affirmance of the finding of no disability. (Docket Entry 22 at 5-10.)[6] Defendant's position should prevail.

## Failure to Obtain VE Testimony

The ALJ ruled that, despite Plaintiff's severe impairments (as found at step two), she retained the RFC "to perform medium work . . . except that she is limited to simple, routine, repetitive tasks in a low-stress environment with low levels of social interaction." (Tr. 14.)[7] At step five, the ALJ "consider[ed] [Plaintiff's RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2." (Tr. 16.) Pursuant to that review, the ALJ observed that, "[i]f [Plaintiff] had the [RFC] to perform the full range of medium work, considering [her] age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.29." (Tr. 17.) The ALJ then recognized that Plaintiff's RFC did not allow for the full range of medium exertional-level work, but instead included certain non-exertional restrictions (i.e., simple, routine, repetitive tasks ("SRRTs") in a low-stress environment with low levels of social interaction); "[h]owever, [the ALJ determined that] the additional

---

[6] The original pagination in Defendant's brief begins by identifying the second page as "1" and then counts upward with each successive page. (See Docket Entry 22.) Pin cites to Defendant's brief refer to the page numbers in the CM/ECF footer appended to Defendant's brief at the time of electronic filing, rather than the original pagination in Defendant's brief.

[7] Plaintiff's brief does not contend that the record lacks substantial evidence supporting the ALJ's RFC finding. (See Docket Entry 20 at 4-8.)

8

limitations have little or no effect on the occupational base of unskilled medium work."  (Id.; see also id. ("[U]nder SSR [Social Security Ruling] 85-15, none of the preceding limitations, singly or in combination, cause a significant erosion of the unskilled occupational base of jobs available to [Plaintiff].").)  Given that determination (and without testimony from a VE), the ALJ concluded that "[a] finding of 'not disabled' [wa]s therefore appropriate under the framework of [Medical-Vocational Rule 203.29]."  (Id.)

Where, as in this case, "the claimant reaches step five, the burden shifts to the [Commissioner] to produce evidence that other jobs exist in the national economy that the claimant can perform considering his [or her] age, education, and work experience." Hunter, 993 F.2d at 35.  "The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (Grids) or by calling a [VE] to testify." Aistrop v. Barnhart, 36 F. App'x 145, 146 (4th Cir. 2002) (citing 20 C.F.R. § 404.1566)).[8]  According to Plaintiff, "when non-exertional as well as exertional limitations exist, the testimony of a [VE] is normally required."  (Docket Entry 20 at 5 (citing Hooper v. Heckler, 752 F.2d 83 (4th Cir.

---

[8] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy.  There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels.  Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table.  Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.'" Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

9

1985)).) Defendant agrees with Plaintiff that, "when, as here, 'non-exertional as well as exertional limitations exist, the testimony of a [VE] is *normally* required'" (Docket Entry 22 at 6 (quoting Docket Entry 20 at 5) (emphasis added by Defendant)); however, Defendant emphasizes the word "normally" within that legal postulate and focuses on the logical correlative, i.e., "'not every non-exertional limitation . . . preclude[s] reliance on the Grids'" (id. (quoting Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989))).

As noted above, in this case, the ALJ only opted to rely on the Grids after specifically concluding that Plaintiff's restriction, within the medium exertional-level, to SRRTs in a low-stress environment with low levels of social interaction "ha[d] little or no effect on the occupational base of unskilled medium work." (Tr. 17; see also id. ("[U]nder SSR 85-15, none of the preceding limitations, singly or in combination, cause a significant erosion of the unskilled occupational base of jobs available to [Plaintiff].").) Defendant expressly relied on that determination by the ALJ in moving for judgment (see Docket Entry 22 at 7) and noted that Plaintiff's brief seeking judgment "does not challenge the ALJ's reasoning" (id. (citing Docket Entry 20 at 4-5)). Plaintiff has made no subsequent filing(s) offering any rationale for the Court to reject the ALJ's ruling that, even with the non-exertional limitations of Plaintiff's RFC, a broad spectrum of unskilled medium work remained available to Plaintiff, such that reliance on the Grids (without resort to VE testimony, pursuant to

10

the exception explicitly recognized in Walker and implicitly recognized in Hooper) remained appropriate in this case. (See Docket Entries dated Feb. 7, 2014, to present.)

Under these circumstances, the Court should affirm the ALJ's step five ruling, given (1) the failure of Plaintiff to develop appropriate argument on point, see, e.g., Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Nickelson v. Astrue, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the court will not address them."), as well as (2) the abundant authority supporting the ALJ's pertinent conclusion(s), see, e.g., Cooper v. Secretary of Health & Human Servs., No. 86-3514, 843 F.2d 1390 (table), 1988 WL 27503, at *1, 5 (6th Cir. Mar. 31, 1988) (unpublished) (holding that "ALJ was justified in relying upon the grids," where ALJ "observed that claimant retained the [RFC] to perform simple and repetitive sedentary work of a low-stress type"); Smith v. Colvin, No. 3:13CV570MOC, 2014 WL 2159122, at *4 (W.D.N.C. May 23, 2014) (unpublished) ("The ALJ concluded [the] plaintiff could do medium

unskilled work with limited public contact. . . . The ALJ reasoned [that] unskilled work usually involves working with things and not the public, a finding which finds support in the regulations and case law within the Fourth Circuit. . . . The ALJ was not obligated to bring in a VE and properly relied on the Grids in finding [the] plaintiff not disabled." (internal citation omitted)); Livingston v. Colvin, No. 3:13CV233MOC, 2014 WL 496484, at *6 (W.D.N.C. Feb. 6, 2014) (unpublished) ("Plaintiff argues that the ALJ finding that her RFC for light work was limited to SRRTs prevented the ALJ from relying on the Grids in determining whether work existed in significant numbers in the national economy that she could perform. . . . A limitation to SRRTs does not prevent an ALJ from relying on the Grids."); Scott v. Colvin, No. 1:12CV170RJC, 2013 WL 3927607, at *6-7 (W.D.N.C. July 29, 2013) (unpublished) (rejecting argument "that the ALJ should have consulted a [VE] to support [the] step-five determination . . . [where] [t]he ALJ determined that [the] [p]laintiff does suffer from mental health impairments . . . accounted for in the ALJ's RFC determination by restricting [the] [p]laintiff to the performance of non-complex, repetitive and routine tasks in a low stress, non-production environment that does not involve significant interpersonal interaction . . . [because] limitation to simple, unskilled, entry level work that allows for less stress work without public contact or significant interaction with others would

12

not significantly erode the occupational base represented by the Grids" (internal quotation marks omitted)); Lewandowski v. Astrue, No. 1:07CV1777DLB, 2008 WL 4736788, at *8 (E.D. Cal. Oct. 28, 2008) (unpublished) ("[T]he ALJ determined that [the] [p]laintiff could perform a significant number of jobs in the national economy. In this regard, he determined that her non-exertional limitation to simple, routine tasks had little or no effect on the occupational base of unskilled light work. The ALJ was entitled to make this determination." (internal citation omitted)).

Subsequent Favorable Disability Ruling

The parties have agreed that, on October 13, 2010 (i.e., approximately four months after the ALJ's decision at issue in this case), Plaintiff again applied for Social Security disability benefits, alleging an onset date of June 17, 2010 (i.e., the day after the ALJ's decision at issue in this case). (Docket Entry 20 at 5; Docket Entry 20-1 at 4; Docket Entry 22 at 7; Docket Entry 22-1 at 4.) They further have agreed that, on September 12, 2013, the ALJ assigned to hear that second application (hereinafter, the "second ALJ") ruled Plaintiff disabled as of June 17, 2010. (Docket Entry 20 at 5; Docket Entry 20-1 at 1, 5, 7-9; Docket Entry 22 at 8 & n.4; Docket Entry 22-1 at 1, 5, 7-9.)[9] Finally, the

---

[9] Both parties filed with their briefs a copy of the second ALJ's letter to Plaintiff enclosing the favorable decision. (Docket Entries 20-1, 22-1.) Because that letter and decision have independent internal pagination, pin cites to the attachments encompassing them refer to the page numbers in the CM/ECF footer appended to said attachments upon their electronic filing with the Court.

13

parties have agreed that, "'[w]here a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence.'" (Docket Entry 20 at 5 (quoting Hayes v. Astrue, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007)); Docket Entry 22 at 8-9 (same, but with emphasis on "may").) Defendant, however, emphasizes the word "may" in that legal postulate and quotes a recent Fourth Circuit decision clarifying that "'the evidence supporting the subsequent decision,'" rather than the "'subsequent decision itself,'" actually represents the possible "'new and material evidence under §405(g).'" (Docket Entry 22 at 9 (quoting Baker v. Commissioner of Soc. Sec., 520 F. App'x 228, 229 n.1 (4th Cir. 2013), but without the internal quotation marks reflecting that Baker, in turn, quoted Allen v. Commissioner of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009)).)[10]

Additionally, as Defendant's brief notes (see id.), the Fourth Circuit further has indicated that a plaintiff bears the "burden of showing that evidence relied upon in reaching the favorable decision pertains to the period under consideration in [the pending

---

[10] The above-quoted references to "new and material evidence" under Section 405(g) in Baker and to "new and material evidence" in Hayes concern the provision of the Act that authorizes the Court to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g) (emphasis added).

14

case]." Baker, 520 F. App'x at 229 n.1. To meet that burden here, Plaintiff's brief offers only the following conclusory statement (unsupported by any citation or example): "A close inspection of the last decision clearly shows the same evidence before the first ALJ was examined and utilized by the second ALJ to find [Plaintiff] disabled one day aft [sic] the prior ALJ issued his denial decision." (Docket Entry 20 at 5.) Assuming that the second ALJ's reappraisal of the same evidence considered at the time of the benefits denial now under review could provide grounds for remand,[11] Plaintiff cannot obtain such relief by simply making bald assertions. See, e.g., Albertson v. Colvin, No. CV12-2508-JPR, 2013 WL 2251639, at *18 (C.D. Cal. May 22, 2013) (unpublished) ("[The] [p]laintiff's conclusory arguments without citation to the record are insufficient to meet his burden."); Johnson v. Astrue, No. 3:09CV2458, 2011 WL 902966, at *3 (D.S.C. Mar. 15, 2011) (unpublished) (adopting finding by magistrate judge that the plaintiff "did not satisfy the requirement that a claimant seeking

---

[11] Such an assumption runs against the weight of persuasive authority. See, e.g., Allen, 561 F.3d at 653 ("[R]emand under sentence six [of Section 405(g)] is not meant to address the correctness of the administrative determination made on the evidence already before the initial ALJ. In addition, it is overly broad to read the words new evidence in sentence six to include a subsequent decision based on the same evidence." (internal citation, footnote, and quotation marks omitted)); Atkinson v. Astrue, No. 5:10CV298FL, 2011 WL 3664346, at *17 (E.D.N.C. July 20, 2011) (unpublished) (agreeing with and quoting from Sayre v. Astrue, No. 3:09-01061, 2010 WL 4919492, at *4 (S.D.W. Va. Nov. 29, 2010) (unpublished), as follows: "the Sixth Circuit's analysis [in Allen] 'makes sense because using a subsequent decision as independent evidence is tantamount to a collateral attack on the initial decision . . . [and] would run counter to the need for finality and consistency between SSA [Social Security Administration] disability determinations"), recommendation adopted, 2011 WL 3664858 (E.D.N.C. Aug. 18, 2011) (unpublished).

to introduce new evidence make at least a general showing of the nature of the new evidence").

Moreover, as again pointed out by Defendant (see Docket Entry 22 at 9-10), a close inspection of the decision dated September 12, 2013, actually reflects that the second ALJ deemed Plaintiff disabled based on events <u>post-dating</u> the decision issued on June 16, 2010. For example, after observing that the ALJ who rendered the decision at issue in this case "found that [Plaintiff] was capable of medium work" (Docket Entry 20-1 at 8; Docket Entry 22-1 at 8), the second ALJ stated: "While I do not doubt that <u>the previous assessment was reasonable</u> given [Plaintiff's] limitations <u>at that time</u>, I find that her <u>increased</u> level of impairment <u>in the following years</u> have <u>further limited</u> her ability to perform work-activity." (Docket Entry 20-1 at 8-9 (emphasis added); Docket Entry 22-1 at 8-9 (emphasis added).) Similarly, in discussing the medical evidence supporting the conclusion that "[t]he severity of [Plaintiff's] impairments meets the criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1" (Docket Entry 20-1 at 7; Docket Entry 22-1 at 7), the second ALJ focused largely on developments after June 16, 2010:

> Medical records show ongoing outpatient treatment since November 2008, shortly after she stopped working. She has been treated at various mental health centers and had trials of various medications . . . . She has a history of multiple emergency hospitalizations for suicidal ideation and suicide attempts. In <u>July 2010</u>, she was admitted to an inpatient program for one-month at Daymark Recovery Services. She presented with schizoaffective

16

disorder, marijuana dependence and cocaine dependence in remission. She reported homicidal ideation towards her sister along with auditory and visual hallucinations. She reported that medication helped "tame" the voices. She indicated a history of command hallucinations telling her to hurt herself and others non-lethally. She stated that she had acted on these voices in the past.

In <u>April 2011</u>, at her Consultative Examination for Disability Determination Services, [Plaintiff] reported a long history of depression beginning around age 13. She stated that she was chronically suicidal and had overdosed on several occasions. She reported a history of auditory hallucinations and visions of ghosts. She also indicated symptoms of mania during which she would shoplift and go without sleep, followed by extended periods of depression. She reported chronic nightmares associated with childhood abuse. Dr. Sanders noted that her prognosis was guarded and that she needed to restart psychotropic medications.

He also indicated that if awarded benefits, she would be unable to handle benefits without assistance.

According to treatment notes dated <u>November 2012</u>, [Plaintiff] presented with a depressive episode having approximately 6 weeks duration. She stated that most mornings she wished she did not wake up. She endorsed symptoms of long term problems with self-esteem, overeating and insomnia. She acknowledged that she worried excessively and found her worries difficult to control. She reported continued symptoms of hallucinations. Records show that <u>she continues to see therapists</u> at Grant Blackford Mental Health Center.

(Docket Entry 20-1 at 7-8 (internal citations omitted) (emphasis added); Docket Entry 22-1 at 7-8 (internal citations omitted) (emphasis added).)[12]

---

[12] The fact that the second ALJ expressly "d[id] not find a basis for reopening [Plaintiff's] prior [DIB] application or [SSI] application" (Docket Entry 20-1 at 4 (citing 20 C.F.R. §§ 404.988 & 416.1488); Docket Entry 22-1 at 4 (citing 20 C.F.R. §§ 404.988 & 416.1488)), further bolsters the notion that the disability finding on September 12, 2013, resulted from Plaintiff's perceived deterioration <u>after</u> the decision finding no disability on June 16, 2010.

In sum, Plaintiff has failed to show that new, material evidence warrants a remand; in particular, she has not carried her "burden of showing that evidence relied upon in reaching the favorable decision pertains to the period under consideration in [this case]," Baker, 520 F. App'x at 229 n.1.

## CONCLUSION

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 19) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 21) be granted, and that this action be dismissed with prejudice.

　　　　　　　　　　　　　　　　　　/s/ L. Patrick Auld
　　　　　　　　　　　　　　　　　　　**L. Patrick Auld**
　　　　　　　　　　　　　　**United States Magistrate Judge**
July 8, 2014